R. Freedman *v.* Providence Washington Insurance Company of Providence, R. I., Appellant.

*Insurance—Fire insurance—Proof of loss—Waiver—Evidence.*

Waiver of the proofs of loss may be inferred from acts of the insurer which show either a recognition or a denial of liability exclusively on other grounds. Waiver is essentially a matter of intention, and to establish it there must be some declaration or act from which the insured may reasonably infer that the insurer does not mean to insist upon a right which, because of a change of position induced thereby, it would be inequitable to enforce.

At the trial of an action upon a policy of fire insurance, the insurance company set up as a defense misrepresentations as to the ownership of the goods. The plaintiff claimed a waiver of the fraud. The evidence showed that at a time when the agent of the company was trying to adjust the loss, he specified no particular ground of defense. He made inquiries as to the extent of the loss, the value of the goods destroyed, and proposed a settlement. When this was refused he notified the plaintiff to go on and make out her proofs of loss ; and, after the proofs were made out, he called her attention to a formal defect in them. *Held,* (1) that he did nothing to mislead her, to place her in a worse position or cause her to

incur any expense which she would not have been obliged to incur had he remained silent; (2) that the evidence was insufficient to show an intention to waive any ground of defense.

Argued March 17, 1896. Appeal, No. 48, Jan. T., 1896, by defendant, from judgment of C. P. Bradford Co., Sept. T., 1892, No. 633, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before PECK, P. J.

The facts appear by the opinion of the Supreme Court, and from the part of the charge of the court below, which is as follows :

If you believe that Louis Freedman made known to Mr. Sturdevant the truth, that R. Freedman, the plaintiff in this case, was a married woman, and by accident or clerical error or some mistake this policy has been written as it is, then we think that the plaintiff would be entitled to recover, because no fraud has been practiced upon them. The original policies were solicited by Mr. Sturdevant himself, and we think that he was not the agent of the assured, so that if afterward he made any representations which were not true and which he had no right to make from information which he had received from the plaintiff or her authorized agent, then we say that the company would not be bound by any such statements made. Because, in obtaining this insurance, we think that under the weight of authority he was the agent of the company and not the agent of Mrs. R. Freedman. If you believe under the instructions which we have given to you that R. Freedman's agent correctly represented to Mr. Sturdevant her condition, and made known to him that she was a married woman and all the necessary facts to enable him or the company to have issued a policy which was correct, then you may take into consideration whether or not this was an honest loss. And if it was an honest loss, you may go a step farther and determine whether or not she has suffered the amount of loss which she claims. [If, on the other hand, you believe that Mr. Sturdevant tells the matter as it is, then you may advance to another stage in the proceedings, although you believe under our instructions that this policy as originally issued, was not binding upon the company, owing to the false

statements which were made by Louis Freedman, and determine whether or not the company have, by any act of theirs, ratified this policy, or done such acts as would estop the company from denying that the policy was a good and valid policy.] [7]

On this branch of the case the plaintiff relies upon the evidence, first, of the husband, Bernard Freedman, who testifies that in April, 1892, Mr. Little, who was the special agent of this company, came to his store together with a man by the name of Walker; that they came to the store and inquired if Mrs. Freedman was at home, and that he said to them that she was, and that they then inquired if they had the books and papers ready for examination. I think in connection with this Mr. Freedman had been notified that these men would come and examine the papers and books, but I am not quite positive whether this evidence was in this case or another—but at any rate they came to the store, according to his statement, and made the requests which we have stated to you. That he told them that the papers were not at the store but that they were over at the house, and that he would go over and get them. That he did go and get them and brought them back to the store, and that they inquired where they should go to examine the papers. That he said he was willing to go anywhere, and they suggested to go to Mr. Tidd's office, an insurance agent at Athens. That they went over there, and that the insurance agents asked him certain questions about Mrs. Freedman, where she had got the goods, and other matters pertaining to this loss, and then made him a certain offer of settlement of the case. That this offer was declined and he returned to the store, and in fifteen or twenty minutes after he returned to the store they came back to the store, and inquired whether he had made known their offer to Mrs. Freedman and what she said about it, and that he replied that he had not done it, but it was no use, she would not accept, and that they then told him to go on and make proofs of loss. They also rely upon the letter, dated June 3, which required him to go to Laceyville and obtain an affidavit, from the nearest magistrate, of the loss, setting forth certain things as required by the terms of this policy. It seems from the evidence that he did go there, and took an attorney with him, for the purpose of obtaining the proofs which the company required, but you will remember in this letter there was this

proviso put in, or this qualification, "The Providence Washington Insurance Company does not waive any of its rights and conditions under the policy." That is, that they did not waive any of their rights or conditions under the policy. That is, if the policy required anything, that that must be complied with notwithstanding this demand, and that this demand was no waiver of any conditions in the policy. [Now, if that policy was void on account of fraud and the defendant had a right to claim it so, then they had no right whatever to compel the plaintiff to produce proofs of loss or anything else,] [8] because if the policy was void on their part it was equally void as far as the defendant was concerned. If the company was not bound, neither was the plaintiff. There must have been a mutuality in this contract or else it was no contract at all. That is one of the grounds upon which the company might legally refuse to pay this policy, because there was not a mutuality between the parties. They had agreed to insure, according to their theory, a man, and this plaintiff was trying to enforce this policy in favor of a woman, and they did not both agree to the same thing, according to their theory. So if the policy was void on the part of the company they could not enforce anything of this kind against the plaintiff. If it was void as to one it was void as to both, unless they chose to ratify it. But in pursuance of this notice he did go to Laceyville with his attorney, and procured the papers that were required. The company shortly afterward, through Mr. Little, their special agent, demanded that he should procure certain duplicate statements, and that there may be no misunderstanding about it we will read this letter, "Exhibit R," as it appears. "The Providence Washington Insurance Company. J. W. Little, Special Agent. Glenside, Pa., June 14th, 1892. R. Freedman, Athens, Pa. Madam: I have the magistrate's certificate lately sent by yourself. Regarding the various articles claimed by yourself as having suffered loss thereon by fire, you are hereby asked to procure and have for examination, bills or duplicates thereof, showing dates, place of purchase and prices paid for the articles above named. It will be necessary for you to do this before the company can recognize the papers furnished them as a proper proof of loss in that regard, under conditions of their policy No. 918 issued at the Wilkes-Barre, Pa., agency and held by

yourself. Truly Yours, (signed) J. W. Little, Sp. A. Prov. Wash. Ins. Co.

In connection with this letter that has been called to your attention, considerable time has been spent in giving evidence as to when the duplicate bills were obtained, and it is for you to determine, under all the light that you have when the duplicates were obtained. Were they obtained on the 12th of April, when Mr. Little was on there for the purpose of examining the papers? If he had all the duplicate bills and all the accounts on that occasion, would he or would he not be likely to have written this letter demanding that she should obtain them? It is for you to determine under the evidence whether or not he did. The plaintiff claims that after that request she did go on and procure, at considerable expense and cost, these duplicate bills. [Now, in order to estop the company they must have known the facts. They must have known that this was a married woman and they must have been acquainted with all the facts, in order for them to estop themselves. If they did know the facts and required this plaintiff to do what she would not otherwise have done—required her to go to an expense which she would not otherwise have incurred—if they did, knowing the facts, require this, then they are estopped from denying that they were bound by this insurance.] [9]

Defendant's points were among others as follows:

1. The plaintiff, being a married woman when the policy in suit was issued, in order to recover thereon must give such evidence in regard to how the policy came to be issued to a male as would warrant a chancellor in reforming the same before she can recover upon the policy. *Answer:* We affirm this, unless you are satisfied that the truth was made known to the agent who took this policy. Then we say that she cannot recover unless the company has since waived this forfeiture by its conduct. [1]

2. No sufficient evidence has been given to warrant a reform of the policy as specified in the first point. *Answer:* We deny this point, or we leave to you as a matter of fact whether or not Louis Freedman, William Freedman, and the other witnesses that have been called to corroborate them, tell the truth, or whether Mr. Sturdevant tells the truth. [2]

5. There was no sufficient evidence to submit to the jury to

find that the defendant company has waived its right to defend the action on the policy on the ground that it was procured by means of the false representations of the plaintiff's agent. *Answer:* We refuse so to charge you, but we submit to you the evidence of what the agents of this defendant knew; whether they did know all the facts and whether they required the plaintiff to go to trouble and expense which she would not have gone to and incurred had she known that the defendant was refusing to pay this policy on the ground that it had been procured by fraud. [3]

6. There is no sufficient evidence to submit to the jury that the company has estopped itself from defending the action on the policy on the ground that it was procured by means of the false representations of the plaintiff's agent. *Answer:* We decline to so instruct you, but we leave, as we before stated, that question for you to determine. [4]

7. S. A. Sturdevant in procuring the policy in suit from the Wilkes-Barre agency of the defendant was the agent of the plaintiff under the evidence in the case, and it appearing that Sturdevant when he procured it represented that the insured was a male, the company by the policy did not insure the plaintiff. *Answer:* We decline so to instruct you. [5]

Verdict and judgment for plaintiff for $2,383.66. Defendant appealed.

*Errors assigned* were (1–5, 7–9) above instructions, quoting them.

*I. McPherson, E. Overton* and *E. J. Angle* with him, for appellant.—An applicant for insurance, in giving information required of him, like a witness on the stand, should tell the truth: Smith v. Ins. Co., 17 Pa. 253; Freedman v. Fire Assn. of Phila., 168 Pa. 249; Diffenbaugh v. Union Fire Ins. Co., 150 Pa. 274.

The policy on which this action is founded was void ab initio; void at the time of the fire, and no life has been infused into it since: 1 Biddle on Ins. sec. 578; Zimmerman v. Fire Ins. Co., 76 Iowa, 352; Mead v. Ins. Co., 64 N. Y. 453.

We contend that the court erred in instructing the jury that they might find that the defendant company had waived this defense, or estopped itself from setting it up, under the evidence in the case.

If the equitable doctrine of waiver or estoppel, applicable under certain circumstances in actions on insurance policies, is applicable to the peculiar and exceptionable facts of this case, we contend that there was no evidence to warrant its application in this case : Nat. Ins. Co. v. Brown, 128 Pa. 386 ; Gould v. Ins. Co., 134 Pa. 570 ; McFarland v. Kittanning Ins. Co., 134 Pa. 590 ; Welsh v. London Assurance Corp., 151 Pa. 607 ; McCormick & Son v. Ins. Co., 163 Pa. 184; Diehl v. Ins. Co., 58 Pa. 443 ; Buckley v. Garrett, 47 Pa. 204 ; Niagara Fire Ins. Co. v. Miller, 120 Pa. 504.

The omission of an insurance company to state its defense at the time it objected to proof of loss, or to allege a forfeiture of the policy, constitutes no waiver : Armstrong v. Agricultural Ins. Co., 130 N. Y. 560 ; Clement's Fire Ins. Dig. 626, p. 28 ; Welsh v. London Assurance Corp., 151 Pa. 618 ; Devens v. Mech's & Traders Ins. Co., 83 N. Y. 168.

*H. F. Maynard, I. N. Evans* and *Wm. Maxwell* with him, for appellee.—Fraud is never to be presumed : Helme v. Ins. Co., 61 Pa. 111.

The plaintiff can invoke the aid of the law of estoppel in this case : Western & A. Pipe Lines v. Home Ins. Co., 145 Pa. 346 ; Ben Franklin Ins. Co. v. Flynn & Hamm, 98 Pa. 627 ; Lycoming County Mut. Ins. Co. v. Schollenberger, 44 Pa. 259 ; Wood on Ins. 1161, sec. 526 : Welch v. London Assurance Co., 151 Pa. 607 ; Coursin v. Ins. Co., 46 Pa. 331.

The evidence in the case at bar was sufficient to sustain the finding of the jury in favor of the plaintiff on the question of estoppel : Bonnert v. Ins. Co., 129 Pa. 558.

OPINION BY MR. JUSTICE FELL, May 11, 1896 :

In an action by the same plaintiff, Freedman, against the Fire Association of Philadelphia, reported in 168 Pa. 249, it was held that a policy of fire insurance procured upon the representation that the property insured was owned by and in charge of a successful business man, when in fact the title was in a married woman who exercised no supervision over it, was invalid ; and in that case it was held that there was no evidence of a waiver by the defendant of the right of forfeiture. This action is founded upon another policy which covered the same prop-

erty. The testimony however is different. On the trial of the former action there was no denial that the policy had been issued under the belief, based upon representations made by the agent of the plaintiff, that the goods insured were owned by a man who was personally conducting the business. In this case there was testimony to the effect that the policy had been issued with knowledge upon the part of the company that the goods were owned by Mrs. Freedman. This raised an issue of fact which carried the case to the jury. The submission however included also the question of estoppel. The jury were instructed that if they believed that the policy was procured by false representations they should then determine whether the company had ratified it or was estopped from denying its validity. In substance the instruction was that if the company with knowledge of the fraud had required the plaintiff to procure proofs of loss and to incur expenses, it could not deny that it was bound by the policy. The part of the charge covered by the eighth assignment of error is : " Now if that policy was void on account of fraud, and the defendant had a right to claim it so, then they had no right whatever to compel the plaintiff to procure proofs of loss or anything else." That covered by the ninth assignment is : " Now in order to estop the company they must have known the facts. They must have known that this was a married woman, and they must have been acquainted with all the facts, in order for them to estop themselves. If they did know the facts, and required the plaintiff to do what she would not otherwise have done— required her to go to an expense which she would not otherwise have incurred—if they did, knowing the facts, require this, then they are estopped from denying that they were bound by the insurance."

This instruction raises the only question now to be considered. The testimony of the plaintiff's witness on the subject is this : The fire occurred March 15, 1892 at Laceyville, Wyoming Co. ; on April 12, Mr. Little, the special agent of the insurance company, called at the plaintiff's store in Athens, Bradford county, and asked Bernard Freedman, the plaintiff's husband, if she was at home, and was informed that she was. He then asked to see the books and papers relating to the business which had been conducted at the Laceyville store, where the fire occurred.

These were produced by Mr. Freedman, who went with Mr. Little to the office of Mr. Tidd, an insurance agent, in the town. There they examined the papers, and Mr. Little asked Mr. Freedman whether he had ever failed and been sold out, and how long his wife had been doing business in her own name, and how much money she had when she started doing business. To the last inquiry, Mr. Freedman replied : "I don't think it is any of your business." And Mr. Little said: "If it is none of my business we will get even with you." It appears that at this interview an offer of settlement was spoken of, but the above is all of the conversation that is given. Later in the day Mr. Little called at Mr. Freedman's store and asked him if he had informed his wife of the offer made. He replied that he had not, because he knew that she would not accept it, and Mr. Little then said : "Well, if that is the case, go on and make out your proofs of loss." With that the parties finally separated. Proofs of loss were furnished. On June 3d, Mr. Little wrote to the plaintiff calling her attention to the requirement of the policy that the certificate of a magistrate should be appended to the proofs and notifying her that this requirement must be complied with. The letter closed with this sentence : "The Providence Washington Ins. Co. does not waive any of its rights or conditions under said policy 918." The certificate was sent, and on June 14th Mr. Little again wrote acknowledging its receipt, and asked that the bills or duplicates thereof showing dates and places of purchase and prices paid for goods be procured. These letters were addressed to "R. Freedman, Madam." This is all that took place between the parties after the fire and before suit was brought, and it is the only evidence upon which an estoppel can be based.

It is by no means clear from the evidence that at this time Mr. Little knew what representations had been made at the time the insurance was procured, but assuming that the defendant had knowledge of them, was there any ground of estoppel?

In Freedman v. Fire Ass'n, 168 Pa. 249, it was said that the call for the magistrate's certificate would be evidence under our cases of a waiver of other defects in the proof of loss, and that it might raise the question of the right to defend for the breach of other conditions or for the failure of the plaintiff to take steps which were merely formal prerequisites to a suit, and

attention was called to the distinctions pointed out in the opinion of the Court in Gould v. Dwelling House Ins. Co., 134 Pa. 570, and McCormick v. Royal Ins. Co., 163 Pa. 184. The subject was not as fully considered as it would have been had a new venire been awarded and the question thus left to be raised again in the case.

Waiver of the proofs of loss may be inferred from acts of the insurer which show a recognition of liability or a denial of liability exclusively on other grounds: Penn Ins. Co. v. Dougherty, 102 Pa. 568; Lebanon Ins. Co. v. Erb, 112 Pa. 149; Snowden v. Kittanning Ins. Co., 122 Pa. 502; and the failure of the insurer to give notice of objections to the proofs of loss furnished within the stipulated time and intended as a compliance with the requirements of the policy is evidence of a waiver of defects: Gould v. Dwelling House Ins. Co., supra. The reason for the rule, and the distinction between an attempted compliance with the requirements of the policy and a failure without valid excuse, are fully pointed out in the case last cited, and it is said in the opinion: " In establishing this rule in regard to the conduct of insurance companies as to objections to proofs of loss it is not intended to encroach at all on the doctrine of waiver by estoppel as laid down in the well considered and authoritative cases of Trask v. Ins. Co., 29 Pa. 198, Beatty v. Ins. Co., 66 Pa. 9, and others of the same kind."

In most of the cases in which it has been held that an insurance company by specifying one ground of defense was estopped from asserting other grounds at the trial, the failure of the insured has been in not complying with a condition precedent to the right of action, and they come within the rule stated in Gould v. Ins. Co., supra, or were decided upon the ground of express waiver. In McCormick v. Royal Ins. Co., supra, by mutual understanding of the parties, the only matter in controversy between them was the ownership of the property destroyed; all other grounds of defense had been relinquished. Suit having been brought with this understanding to determine the question of ownership and nothing else, it was held that the company should not be permitted to defend on the violation of a clause in the policy regulating the manner in which the lumber should be stored.

In this case the agent of the insurance company specified no

particular ground of defense. He made inquiries as to the extent of the loss, the value of the goods destroyed, and proposed a settlement. When this was refused he notified the plaintiff to go on and make out her proofs of loss. He did nothing to mislead her, to place her in a worse position or to cause her to incur any expense which she would not have been obliged to incur had he remained silent. We see in this no evidence whatever from which an intention to waive any ground of defense can be inferred. In the opinion in Welsh v. London Assurance Corp., 151 Pa. 607, MITCHELL, J., in speaking of the denial of liability for specified reasons as a waiver of other defenses, says: "The only ground upon which such a result can rest is estoppel. No party is required to name all his reasons at once, or any reason at all, and the assignment of one reason for refusal to pay cannot be a waiver of any other existing reason, unless the other is one which could have been remedied or obviated, and the adversary was so far misled or lulled into security by the silence as to such reason that to enforce it now would be unfair or unjust: Ins. Co. v. Brown, 128 Pa. 386. The whole doctrine depends on estoppel, and the essential feature of it is loss or injury to the other party by the act of the party to be estopped. In this respect there is nothing peculiar about actions upon insurance policies. They stand on the same footing as other litigation."

Waiver is essentially a matter of intention, and to establish it there must be some declaration or act from which the insured might reasonably infer that the insurer did not mean to insist upon a right which because of a change of position induced thereby it would be inequitable to enforce: Beatty v. Ins. Co., 66 Pa. 9; Ins. Co. v. Brown, 128 Pa. 386. In the latter case it was distinctly held that the making of an offer of settlement, or the failure to state in the affidavit of defense all the grounds of defense relied upon, did not justify the inference of a waiver.

The judgment is reversed with a venire facias de novo.