## Keiper's Estate

Zimmerman, Myers & Kready, for accountant.

Harris C. Arnold, for exceptant.

SCHAEFFER, J., specially presiding, September 14, 1934.—This is a claim on behalf of Franklin and Marshall College, residuary legatee in the estate of Caroline S. Keiper, deceased, for $11,200, representing unpaid annuities provided for said Caroline S. Keiper by the will of her deceased husband, Lanious B. Keiper. In a prior adjudication, a sufficient sum was impounded for future distribution, pending the final determination of the matter in dispute. In an adjudication filed on April 10, 1934, the court awarded the sum of $3,700 to Edward S. Schmidt, executor of the will of Caroline S. Keiper, deceased, and $7,800 to Nancy Keiper Long. Exceptions were filed thereto by Franklin and Marshall College.

The will of Lanious B. Keiper, deceased, provided, inter alia, as follows: "Seventh: I give and bequeath to my said wife, Caroline S. Keiper, and I direct my Executor and Trustee hereinafter named to pay to her so long as she lives, monthly, beginning on the fifteenth day of the month after my death, and regularly on the fifteenth day of each month thereafter (except when the same falls on a Sunday or legal holiday, in which case the payment shall be made on the sixteenth day of the month), the sum of Eight Hundred Dollars ($800). The monthly payments herein provided for are to have precedence and priority over any other bequests and payments herein directed to be made, except the payment of my debts, and a sufficient part of my estate is to be set aside by my Executor and Trustee to provide for the same. Upon the decease of my said wife, said part of my estate so set aside shall become part of the residue and be distributed as hereinafter provided."

The annuity above referred to was not paid during the last 14 months immediately preceding Caroline S. Keiper's death on February 24, 1933. The executor and trustee of the Lanious B. Keiper estate did not set aside any portion of the estate to provide for the payment of this sum of $800 per month to his widow. The widow and the other parties in interest in said estate had filed a request in writing in the orphans' court that the stock of Champion Blower & Forge Company, comprising a major portion of the estate, should be kept intact

"for the present", resulting in no separate fund being created for the annuity. The annuity was paid regularly from the general income of the estate until the dividends of Champion Blower & Forge Company stock ceased, apparently due to the business depression, about 14 months before the widow's death. All the income from the residuary estate was paid at regular intervals to all the parties in interest either under the will or the partial intestacy. This was a profitable arrangement not only for the widow but for the other parties interested in the estate. To create a separate fund sufficient to pay the required monthly income to the widow would have necessitated the sale or disposition of a large portion of said stock. A fund of about $200,000 would have been necessary for that purpose. Caroline S. Keiper, the widow, was also entitled under the will of her husband, to five twentieths of the income under the residuary clause of the will, which had no priority status. During a period of about 14 years, from 1917 to 1931, the widow received as her five twentieths share of the income from the residue $157,982.62, due mostly to the large dividends paid during that period on the stock referred to. After certain legatees of residuary income had received the aggregate amounts to which they were entitled under specific limitations in the will, the Orphans' Court of Lancaster County on February 15, 1926, as per adjudication then filed, held that an intestacy existed as to nine twentieths of the income. Nancy Keiper Long, residuary legatee under the will of Lanious B. Keiper, deceased, did not receive a share thereof. The widow of decedent was awarded nine fortieths of this intestate share of residuary income, which amounted to $57,673.58 in about 6 years. Thereafter her total share of income from the residuary estate was five twentieths plus nine fortieths or nineteen fortieths. The total income accruing to the entire estate was handled as one common fund by the consent of all parties in interest, and from it payments were made periodically, first, to the widow, and the balance thereof to the beneficiaries of the residuary income, the widow receiving five twentieths until 1926 and thereafter an additional nine fortieths, or a total of nineteen fortieths as aforesaid. This resulted in a payment out of the common fund, or residuary income, to the residuary legatees and heirs of $11,200 more than should have been paid. The widow received nineteen fortieths of $11,200 or $5,320. There had been more than ample income to take care of the deficiency in question and, if a reservation of income had been made to meet it, there would have been $11,200 less to distribute among the residuary legatees and heirs of income, and accordingly the widow would have received $5,320 less as a legatee and heir of residuary income. Nancy Keiper Long, as residuary legatee of income under the will, received twelve fortieths. The other legatees of residuary income received their proportionate share.

The testator, Lanious B. Keiper, does not clearly and specifically direct that a separate fund of legal securities be created for the purpose of paying the $800 monthly to his widow. The will states: "a sufficient part of my estate is to be set aside by my Executor and Trustee to provide for the same". In the last adjudication excepted to, the court said: "The right of an annuitant to have a deficiency in income supplied from the corpus does not depend necessarily upon any rule of law, but is governed rather by the intention of the testator to be gathered from the provisions of the will and his relation to the objects of his bounty. The will of Lanious B. Keiper in its entirety warrants the conclusion that the annuity or monthly payment of $800 to his widow could be paid out of the corpus if the income became insufficient for that purpose."

The intention of the testator with reference to the annuity being payable out of income or principal or both, if required, is not clearly expressed. Evidently,

he thought the income would be sufficient until the death of the widow, as he provides definitely in item 7 of his will relating to the annuity: "Upon the decease of my said wife, said part of my estate so set aside shall become part of the residue and be distributed as hereinafter provided." This related to the residue of principal and not the residue of income. Furthermore, the testator disposes of the residuary income to various parties, including the widow, during the existence of the annuity. In his will, testator manifested a desire also that said stock be held intact.

The will in question expressly provides that the annuity in favor of the widow shall have precedence over other bequests and payments directed to be made under the will. No restraint was placed upon the executor or trustee as to the source from which the widow's annuity should be derived. The trend of the decisions in this State is to supply such deficiencies, although it is generally done by resorting to rents or accrued income. In Denis' Estate, 169 Pa. 493, it was held that the widow was entitled to have a deficiency in her annuity made up out of the rents of the residuary real estate. The court in its opinion said (p. 499): "Nor can we at all agree to the suggestion that the corpus of the fund shall be used to pay the annuity and other charges due the widow. That would not be in conformity with the will and would rapidly deplete the principal of the fund."

In Brush's Estate, 277 Pa. 9, payment was made out of the principal because the testator expressly directed that it be so done, if necessary. In Reed's Estate (No. 1), 236 Pa. 572, 577, it is said: "that where the income out of which an annuity is to be paid fails in any year or years the arrearages on the annuity are to be paid out of subsequent accumulations, unless there is a plain intent expressed in the will to the contrary."

The court after a careful reconsideration sees no persuasive reason to change its former conclusion that, in the absence of accumulated income and rents, a portion of the corpus of the estate of Lanious B. Keiper, deceased, may be used to supply the deficiency to pay the annuity in question. However, it seems necessary to consider other features in connection therewith. Did the widow waive her right to demand a deficiency in her annuity either in whole or pro tanto, or do equitable principles apply to the particular and unusual facts and circumstances of this case? In Freedman v. Providence Washington Insurance Company of Providence, R. I., 175 Pa. 350, it was held that waiver is essentially a matter of intention, and to establish it there must be some declaration or act from which one may reasonably infer that the other party did not mean to insist upon a right which, because of a change of position induced thereby, it would be inequitable to enforce. Whether there has been a waiver is generally a question of fact, and the sufficiency of the evidence relating thereto is for the jury: Batchelder v. Standard Plunger Elevator Co., 227 Pa. 201. A waiver of a legal right may be created by simple contract, a release, or by estoppel. Nancy Keiper Long, as residuary legatee of principal, changed her position with relation to the fund directed to be set aside by testator in his will from which to pay the annuity, the principal of which fund was to go in toto to Nancy Keiper Long. Both Mrs. Long and Mrs. Keiper, by mutual consent or arrangement, waived the creation or setting aside of such a fund. In consequence, Mrs. Long cannot now demand the full value of such a fund or portion of the estate. "Equality is equity", and therefore it follows that Mrs. Keiper or her estate should not invoke in full the loss in the annuity sustained by such failure to carry into effect the express provision of testator's will with regard to such a protective fund, or at least a contingent fund to meet a future emergency or deficiency in income for payment of the annuity.

An accumulation in the nature of the withholding of income temporarily, for the purpose of providing a reasonable contingent fund, in the judicious management of the trust, is valid and not within the prohibition of the statute forbidding certain accumulations: Eberly's Appeal, 110 Pa. 95; Hibbs' Estate, 143 Pa. 217; Howell's Estate, 180 Pa. 515; Spring's Estate, 216 Pa. 529. The conclusion is warranted that a reasonable contingent fund in the instant estate could have been created to carry out the express mandate in testator's will that a portion of this estate be set aside for the payment of said annuity. In view of the very large income, a contingent fund sufficient to pay the amount now in controversy could hardly be considered unreasonable. In Stocking's Estate, 304 Pa. 476, testator directed in his will that the income of a portion of his estate should be paid to his grandson for life and that $1,000 per year should be applied by the trustees for the grandson's maintenance and education until he was 23 years old. The balance of the income was to be invested by the trustees and become part of the trust estate, and on the arrival of the grandson at the age of 23 years he was to be paid the sum of $7,000. In 1922, the court, on petition of the grandson when he reached the age of 21 years, held that the accumulation of income was void under the Act of April 18, 1853, P. L. 503, sec. 9, which prohibits accumulations beyond the minority of a beneficiary. In 1930, when the account of the trustee was adjudicated, the grandson claimed the full amount of $7,000 under the will, but the court refused to give him that amount and gave him that sum less the accumulated income he had received under said court proceedings. At page 481 of the opinion it is said: "the accumulations should be treated as though the testator created a sinking fund for the $7,000 legacy, which was to be taken out of this sinking fund and given to the grandson, and as the latter has curtailed the available source of the sinking fund, he cannot now take the benefit of the $7,000 gift and at the same time take the source from which the gift was to spring."

No case has been submitted and none can be found directly ruling the question at issue. The instant will and the particular facts and circumstances relating thereto seem to have no brother. It is pertinent to consider whether equitable principles should be invoked in arriving at a just solution of the rights of the parties in interest in this proceeding. The orphans' court is a court of equity and, while it does not have general equity jurisdiction, nevertheless equitable principles may be applied in the exercise of its jurisdiction. One of the fundamental maxims in equity is that equity looks upon that as done which ought to be done. It therefore follows that the court may consider the matter at issue as if such a fund had been set aside and Caroline S. Keiper had received therefrom $5,320 as aforesaid, or said payment of $5,320 may be considered as having been made to her on account of the present claim.

Caroline S. Keiper, the widow and annuitant, gained considerably by the mutual arrangement not to set aside a separate portion of the estate to protect her annuity as well as to protect the corpus of such fund for the benefit of the residuary legatee of principal. The widow's estate in which the present exceptant is the principal beneficiary under her will was created mostly by the residuary income thus obtained by the widow.

Reserving or setting aside an amount of principal sufficient to produce an income of $800 monthly during the life of the annuitant, or reserving or setting aside out of income, before making distribution of income, an amount sufficient to pay $800 monthly during the anticipated life of the annuitant, would accomplish the primary object of testator. During the years of plenty before the unprecedented business depression, no such provision was made. This resulted as aforesaid in the annuitant receiving as a legatee and heir of residuary

income nineteen fortieths of the sum which should have been reserved for her as annuitant and which should not have been distributed as residuary income. If the widow had received as annuitant the $11,200 in question, she could not receive any part of it as beneficiary of residuary income. She would receive, however, the benefit of nineteen fortieths of the deficiency. It is not equitable that the annuitant, or her estate, should virtually be paid the second time to the detriment of the residuary legatee of principal.

The court therefore feels that it is just, fair, and equitable that nineteen fortieths of $11,200, or $5,320, be deducted from said claim of $11,200, or credited thereon. This leaves a balance of $5,880 to be paid on said $11,200.

Accordingly, the court awards to Edward S. Schmidt, executor of the will of Caroline S. Keiper, deceased, the full amount of $3,700 which is part of the impounded fund of $11,500, representing undistributed income, collected or collectible, as set forth in the stipulation filed. In addition thereto, $2,180 is directed to be paid out of the principal of the Lanious B. Keiper estate, making a total award of $5,880 to Edward S. Schmidt, executor of the will of Caroline S. Keiper, deceased. The balance of said impounded fund is awarded to Nancy Keiper Long, residuary legatee under the will of Lanious B. Keiper, deceased.

And now, September 14, 1934, the exceptions filed to the adjudication are sustained in part and distribution is made in accordance with this opinion as follows:

| | |
|---|---|
| To Edward S. Schmidt, executor of the will of Caroline S. Keiper, deceased | $5,880 |
| To Nancy Keiper Long | 5,320 |
| To Nancy Keiper Long, being balance of impounded fund in excess of claim of $11,200 | 300 |

From George Ross Eshleman, Lancaster. Pa.