379 A.2d 118

**John T. PFEIFFER, III, Receiver of Goetz Demolition, Inc.**

v.

**GROCERS MUTUAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued June 14, 1977.

Decided Oct. 6, 1977.

2

Thomas K. Noonan, Mahanoy City, for appellant.

Anthony J. Urban, Mahanoy City, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant, Grocers Mutual Insurance Company, contends that the lower court erred in holding that a Manufacturers' and Contractors' Liability Insurance policy covered a demolition company's destruction of two buildings that it had no authority to destroy. Appellee responds that appellant is estopped from denying payment on this ground because it initially and mistakenly disclaimed payment on different grounds. We hold that appellant is not barred from arguing non-coverage and that the policy in fact did not cover the demolition company's destruction of the two buildings.

In May, 1972, the Pennsylvania Department of Transportation awarded Goetz Demolition, Inc. (hereinafter Goetz) a contract to clear a right of way for the relocation of Route 209 near Tamaqua, Schuylkill County, by demolishing and removing certain designated structures. On May 23, 1972, appellant issued a Manufacturers' and Contractors' Liability Insurance policy to Goetz. This policy listed the seven structures which Goetz had contracted to demolish and remove. Goetz negligently destroyed two structures owned by the Reading Anthracite Company (hereinafter Reading) which were not designated in either appellee's contract with the Pennsylvania Department of Transportation or the insurance policy.[1] Subsequently, Goetz went into receivership, and John T. Pfeiffer, III, Esquire, was appointed receiver. In connection with the proceedings to dissolve Goetz, Read-

---

1. The record discloses that the two buildings mistakenly destroyed were across the street from the seven structures properly demolished, and were not in the right of way.

ing filed a claim for damages arising from the destruction of its two buildings. On November 25, 1974, a Schuylkill County Court of Common Pleas conducted a hearing on this claim. Appellant was present at the hearing, but refused to defend against Reading's claim because it believed that the insurance policy did not cover the destruction of the two buildings. In December, 1974, the court entered an order awarding Reading $12,500 and directing appellee to file an action to recoup these damages from appellant. In its award, the court specified that Goetz acted negligently in destroying the two buildings not located in the right of way and not listed for destruction in the demolition company's contract with the Pennsylvania Department of Transportation.

On April 7, 1975, appellee filed a complaint in assumpsit in the Court of Common Pleas of Schuylkill County; appellee sought payment under the insurance policy of the amount awarded to Reading. Appellee answered that the policy did not cover the destruction of the two buildings. On July 9, 1976, the lower court conducted a hearing, and on July 13, 1976, the court entered an order awarding appellee $12,500 plus 6% interest on that amount from November 25, 1974. This appeal followed the lower court's denial of appellant's exceptions.

We will first consider appellee's assertion that appellant is barred from arguing that the insurance policy does not cover the destruction of Reading's two buildings because appellant initially declined payment on different grounds. According to appellee, appellant at first refused to pay because of lack of timely notice, but later abandoned this contention. Appellant next questioned whether the policy was in effect on the date of the destruction of the two buildings.[2] When this issue was resolved to appellant's satisfaction, appellant adopted appellee's failure to co-operate as the basis for its

2. In its letter seeking clarification of the date, appellant also asked for information as to the location of the destroyed buildings.

refusal to pay. Finally, at the November 25, 1974 hearing on Reading's claim, appellant asserted that the insurance policy did not cover the destruction of the two buildings and, therefore, refused to defend. From the date of this hearing, appellant steadfastly maintained that the insurance policy did not apply to the wrongful demolition of the buildings.[3]

In *Slater v. General Cas. Co. of America*, 344 Pa. 410, 25 A.2d 697 (1942), an insurance company initially denied payment on the ground that the policy had been cancelled. Consequently, the insured failed to comply with a policy term requiring that the insured forward the summons and a statement of the claim to the insurer. The insurance company later attempted to shift its ground for denying liability to the insured's failure to comply with the policy term. However, our Supreme Court held that the insurer could not insist on the performance of this provision because its assertion that the policy had been cancelled persuaded the insured that compliance would be a useless gesture. The Court, quoting from *Welsh v. London Assurance Corp.*, 151 Pa. 607 at 618, 25 A. 142 at 143 (1892), articulated the following test for determining when an insurance company's denial of liability on one ground will operate as a waiver of all other grounds: "No party is required to name all his reasons at once, or any reason at all; and the assignment of one reason for refusal to pay cannot be a waiver of any other existing reason, unless the other is one which could have been remedied or obviated, and the adversary was so far misled or lulled into security by the silence as to such reason that to enforce it now would be unfair or unjust  .   .   ." 344 Pa. at 416, 25 A. 143. *See also Glessner v. Neshannock Mut. Fire Ins. Co.*, 331 Pa. 439, 1 A.2d 233 (1938); *Freedman v.*

---

3. In its opinion, the lower court erroneously stated that appellant did not deny policy coverage until it filed its exceptions to the court's order. Appellant's answer and line of defense at the hearing contradict this finding. The lower court made no specific findings concerning appellant's alleged prior reliance on other grounds for denying payment.

6

*Providence Washington Ins. Co.,* 175 Pa. 350, 34 A. 730 (1896); P.L.E., *Insurance,* § 273.

In *Wasilko v. Home Mut. Cas. Co.,* 210 Pa.Super. 322, 328, 232 A.2d 60, 63 (1967), our Court specified the tests for determining when the doctrines of waiver and estoppel preclude an insurer from arguing that coverage under an insurance policy does not extend to a particular incident: "The rule is well established that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground of forfeiture, may not be waived by implication from the conduct or action of the insurer. The doctrine of implied waiver is not available to bring within the coverage of an insurance policy, risks that are expressly excluded therefrom. 16 Appleman, Insurance Law § 9090 at 630; 45 C.J.S. Insurance § 674 at p. 616 n.36. In Pennsylvania, the doctrine of waiver or estoppel cannot create an insurance contract where none existed. *Donovan v. New York Casualty Company,* 373 Pa. 145, 94 A.2d 570 (1953); *Antone v. New Amsterdam Casualty Company,* 335 Pa. 134, 6 A.2d 566 (1939). [Footnote omitted]

"Nor is this a situation where the coverage of an insurance contract is enlarged by reason of an estoppel. 'To work an estoppel, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon. Accordingly, an insurer is not estopped to deny liability on a policy where the plaintiff was not misled by the defendant's conduct.' 16 Appleman, Insurance Law § 9088 at 626." See also P.L.E., *Insurance,* §§ 261, 262.

█ In the instant case, appellant did not waive its right to insist that the policy did not cover the destruction of the two buildings. First, *Wasilko* holds that the doctrine of waiver does not operate to expand coverage under an insur-

ance policy. Second, even with immediate notice, appellee could not remedy or obviate a policy's lack of coverage once the controverted incident had already occurred. Therefore, appellee has not been misled or lulled into a false sense of security by appellant's delayed contention that the policy did not cover the destruction of the two buildings, *Slater v. General Cas. Co. of America,* supra. Nor does the doctrine of estoppel offer appellee receiver any comfort; he offered no proof that he reasonably relied on appellant's initial grounds for denying liability or that he took action to his prejudice pursuant to such reliance. *Wasilko v. Home Mut. Cas. Co.,* supra. *See also Sabino v. Junio,* 441 Pa. 222, 272 A.2d 508 (1971); *Stolarick v. Stolarick,* 241 Pa.Super. 498, 363 A.2d 793 (1976). Accordingly, we hold that appellant is not barred from contending that the insurance policy does not cover property damage arising from the demolition of the Reading buildings.

Next, we consider whether the insurance policy covered damages resulting from the demolition company's negligent destruction of the two Reading buildings. Pennsylvania courts have frequently delineated the applicable rules for construing insurance policies: "This analysis of an insurance policy, like the interpretation of any other written contract, is a question of law for the court. *Bole v. New Hampshire Fire Insurance Company,* 159 Pa. 53, 28 A. 205 (1893). The policy must be read in its entirety; it should be construed according to the plain meaning of the words used, so as to avoid ambiguity while at the same time giving effect to all of its provisions. *Masters v. Celina Mutual Insurance Company,* 209 Pa.Super. 111, 224 A.2d 774 (1966); *Galvin v. Occidental Life Insurance Company,* 206 Pa.Super. 61, 64, 211 A.2d 120, 122 (1965). If it is determined that the language of a policy prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, we must construe that language most strongly against the insurer and accept the construction most favorable to the insured. *Patton v. Patton,* 413 Pa. 566, 573, 198

A.2d 578, 582 (1964); *Flynn v. Allstate Insurance Company,* 50 Pa.D. & C.2d 195, 199–200 (1970). Of course, we may not rewrite an insurance contract or construe clear and unambiguous language to mean other than what it says. *Pennsylvania Manufacturers' Association Insurance Company v. Aetna Casualty and Surety Insurance Company,* 426 Pa. 453, 233 A.2d 548 (1967); *Holliday v. St. Paul Mercury Indemnity Company,* 153 Pa.Super. 59, 33 A.2d 449 (1943)." *Blocker v. Aetna Cas. and Sur. Co.,* 232 Pa.Super. 111, 114, 332 A.2d 476, 477–78 (1975). *See also Mohn v. American Cas. Co. of Reading, Pa.,* 458 Pa. 576, 326 A.2d 346 (1974); *Penn-Air, Inc. v. Indemnity Ins. Co. of North America,* 439 Pa. 511, 269 A.2d 19 (1970); *Miller v. Prudential Ins. Co. of America,* 239 Pa.Super. 467, 362 A.2d 1017 (1976); *Celley v. Mutual Benefit Health and Accident Ass'n,* 229 Pa.Super. 475, 324 A.2d 430 (1974); *Slate Construction Corp. v. Bituminous Cas. Corp.,* 228 Pa.Super. 1, 323 A.2d 141 (1974). Moreover, courts should strive to reconcile any ostensible discrepancies between printed portions of insurance policies and written or typewritten portions. If, however, there is an irreconcilable conflict, the written or typewritten portion which is the parties' last expression of their intentions must be given effect to the exclusion of printed portions. *Morgan Smith Automotive Products, Inc. v. Continental Ins. Co.,* 418 Pa. 190, 210 A.2d 273 (1965); *Wzontek v. Zurick Ins. Co.,* 418 Pa. 30, 208 A.2d 861 (1965); P.L.E. *Insurance,* § 91.

In the instant case, appellant issued a Manufacturers' and Contractors' Liability Insurance policy, denominated a "general liability" policy, to Goetz. This policy contains the following pertinent subdivisions: (1) "Definitions," (2) "Conditions," (3) "Coverage For Premises and For Operations In Progress Including Operations of Independent Contractors," and (4) the "Declarations" page and an attached form. Standardized, printed provisions comprise the first three subdivisions of the policy and delineate the general boundaries of coverage provided by a Manufacturers' and Contractors' Liability Insurance policy. The "Declarations" part of

the insurance policy contains typewritten entries which signify the particular type of insurance contract into which the parties have entered. Here, the parties have indicated their intention to vary the standardized terms so as to adapt coverage to Goetz's particular needs and resources.

In a printed portion beneath the heading "Coverage For Premises and For Operations in Progress Including Operations of Independent Contractors," the policy states the general boundaries of coverage: "The company will pay on behalf of the insured all sums which the insured shall legally become obligated to pay as damages because of

Coverage A. bodily injury or
Coverage B. property damage

*to which this insurance applies,* caused by an occurrence, . . ." (Emphasis supplied) "Occurrence" and "property damage" are defined in a printed portion of the policy headlined "Definitions" as follows: " 'occurrence' means an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;"

The "Declarations" part of the policy [4] stipulates, by way of entries specially typed onto the form, that the policy provides coverage to Goetz for both bodily injury liability, in the amount of $100,000 for each person and $300,000 for

---

4. See note 4 on page 10.

each occurrence, and property damage liability in the amount of $100,000 for each occurrence. The "Declarations" page next lists "Endorsements [5] and Additional Coverage Parts (Identify by Form Numbers)." Typed into the space under this heading is the form number "L 4054s."

Form L 4054s, headlined "Manufacturers' and Contractors' Liability Insurance Coverage Part" is attached to the policy

4. A copy of the "Declarations" page follows:

GENERAL LIABILITY DAILY REPORT

| Item | DECLARATIONS | POLICY NUMBER GL 710693 |
|---|---|---|
| 1. | *Named Insured*<br>ADDRESS:<br>(Number & Street Town County, State & Zip No.) | ·Goetz Demolition, Inc.<br>·R. D. #1<br>·New Ringgold, Pennsylvania<br>· 17960 |
| 2 | Policy Period of the named insured as stated herein from<br>REPRESENTATIVE | · 5/23/72    To  7/23/72<br>Agent or Broker .Yoffee Insurance Agency<br>Office Address .3631 N. Front Street Box 3661<br>Town and State .Harrisburg, Pa. 17105 |

**Grocers Mutual N. O. COPY**
**Insurance Company** MAY 25 1972

South Fork, Pennsylvania

3. The insurance afforded is only with respect to such of the following Parts designated by an "X" in ☒ and Coverages therein as are indicated by specific premium charge or charges The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto

| | | LIMITS OF LIABILITY | | | ADVANCE PREMIUM |
|---|---|---|---|---|---|
| Comprehensive General Liability Insurance ☐ | | | | | |
| Owners', Landlords' and Tenants' Liability Insurance ☐ | | | | | |
| Manufacturers' and Contractors' Liability Insurance ☒ | | | | | |
| Contractual Liability Insurance ☐ | | | | | |
| Completed Operations and Products Liability Insurance ☐ | EACH PERSON | EACH OCCURRENCE | AGGREGATE | | |
| Bodily Injury Liability | $ 100,000. | $ 300,000. | $ | $ 600.00 |
| Property Damage Liability | XXXXXX | $ 100,000. | $ | $ Incl. |
| | EACH PERSON | EACH ACCIDENT | | | |
| Premises Medical Payments Insurance ☐ | $ | $ | | $ | |
| Comprehensive Personal Insurance ☐ | EACH PERSON | EACH OCCURRENCE | EACH ACCIDENT | | |
| Farmer's Comprehensive Personal Insurance ☐ | | | | | |
| Personal Liability | XXXXXX | $ | XXXXXX | | |
| Personal Medical Payments | $ | XXXXXX | $ | $ | |
| Physical Damage to Property | XXXXXX | $ | XXXXXX | | |
| Animal Collision | Market value not exceeding $300 each animal | | | $ | |
| Endorsements and Additional Coverage Parts #<br>(IDENTIFY BY FORM NUMBERS) | L 4054s | | | $ | |
| 1If Policy Period more than one year and the premium is to be paid<br>In installments premium is payable One effective date of policy $     1st Anniversary $ | | | Total Advance Premium | $ 600.00 |
| Audit Period Annual, unless otherwise stated ** | | | 2nd Anniversary $ | |
| 4 | The named insured is, individual X | partnership | | corporation | |
| | joint venture | other | | | |
| 5 | During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein ** | | | | |
| **ABSENCE OF AN ENTRY MEANS "NO EXCEPTION". | | | | + Not applicable in Texas |

5. An endorsement is a provision added to an insurance contract which alters its scope or application.

with the notation that it is "to complete said policy".[6]  Form L 4054s is a chart which describes the "General Liability Hazards."  In a box marked "Premises-Operations," the form describes the hazards as "Wrecking Building or Structures . . . at site of wrecking."  The buildings to be demolished and removed are then specifically listed.  Opposite these entries, one finds premium bases, rates, and amounts stated in typewriting.  In boxes marked "Escalators" and "Independent Contractors," Form L 4054s specifies that no escalators or independent contractors are covered by this policy.

**6.**  We reproduce Form L 4054s below:

MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE COVERAGE PART

| SCHEDULE | | For attachment to Policy No GL 710693 | | . to complete said policy |
|---|---|---|---|---|
| GENERAL LIABILITY HAZARDS | | | | |
| DESCRIPTION OF HAZARDS | CODE NO | PREMIUM BASES | RATES | ADVANCE PREMIUM |
| | | | BODILY INJURY / PROPERTY DAMAGE | BODILY INJURY / PROPERTY DAMAGE |
| Premises — Operations | | (a) Area (sq ft) (b) Frontage (c) Remuneration | (a) Per 100 sq. ft. of Area (b) Per Linear ft. (c) Per $100 of Remuneration | |
| Wrecking Buildings or Structures not marine-inluding salesmen or clerical at site of wrecking Demolition of: | 3451SxC | | | 600.00 / Incl. |
| 1. Claim #5302881-Mary Terrace, Schuylkill Twp., Frame Garage & Townhouse | | | | |
| 2. Claim #5302882-G.P. & S.H. Wolfe, Schuylkill Twp., Frame Gargge | | | | |
| 3. Claim #5302892-Mart Cuff Schuylkill Twp., Advertising Sign | | | | |
| 4. Claim #5302893-3M Advertising Sign- Schuylkill Twp. | | | | |
| 5. Claim #5302895-United Outdoor Advertising Sign Schuylkill Twp. | | | | |
| 6. Cliam #5302897-National Outdoor Advertising Sign Schuylkill Twp. | | | | |
| 7. Claim #5302899-3M Advertising Sign Schuylkill Twp. | | | | |
| Escalators (Number at Premises) | | Number Insured | Per Landing | |
| | | NONE COVERED HEREUNDER. | | |
| Independent Contractors | | Cost | Per $100 of Cost | |
| | | NONE COVERED HEREUNDER. | | |
| | | Total Advance B.I. and P.D. Premiums | 600.00 / Incl. | |
| | | | Total Advance Premium | $ 600.00 |
| Location of all premises owned by, rented to or controlled (ENTER "SAME" IF SAME AS ITEM 1 OF DECLARATION), by the named Insured | | See Above | | |
| Interest of named Insured in such premises | | | | "OWNER", "GENERAL LESSEE" OR "TENANT" |

■ We believe that the "Declarations" part of the policy and the accompanying Form L 4054s unambiguously limit the coverage of the insurance policy to property or bodily damages arising from the demolition of the seven specified structures and buildings. In *Newman v. Massachusetts Bonding and Ins. Co.,* 361 Pa. 587, 65 A.2d 417 (1947), our Supreme Court construed a Manufacturers' and Contractors' Liability Insurance policy very similar to the one now confronting us. In the "Declarations" part of the policy, the policy referred to "Hazards." The only class of hazards specified in typewriting under the headline "Coverage Analysis" was "Premises and Operations." Opposite the listed entries delineating the "remises and perations" covered were typewritten premium bases and rates. The Court recognized that the typewritten "Premises and Operations" box complete with premium bases and rates constituted the parties' particularized expression of the boundaries of the policy's coverage which would govern any inconsistent printed portions. See also *Wzontek v. Zurich Ins. Co.,* supra. In the instant case, the "Declarations" page specifies that Form No. L 4054s will delimit the coverage extended by the policy. Form No. L 4054s, headlined "Coverage Part," and denominated as completing the policy describes the "General Liability Hazards" covered by the policy. The "Premises and Operations" box specifies that only operations at the seven listed structures or buildings are insured. That the "Premises-Operations" box does constitute a limitation on the policy's coverage is confirmed by the listing of premium rates, bases, and amounts opposite the designated structures and by the specific notation in the "Escalators" and "Independent Contractors" boxes on Form No. L 4054s that no escalators or independent contractors are covered. *Newman v. Massachusetts Bonding and Ins. Co.,* supra. Finally, we note that our interpretation of the typewritten entries on the "Declarations" page and Form No. L 4054s is reconcilable with the printed general coverage provision which only obligates appellant to pay damages because of bodily injury or property damage *to which this insurance applies* caused

by an occurrence. (Emphasis supplied)[7] The "Declarations" page and accompanying Form No. L 4054s spell out the property damage to which the policy applies and specifically and unambiguously limit it to damages arising from the demolition of the seven designated structures.[8] Accordingly, we hold that the property damage arising from the negligent destruction of the two Reading buildings not listed in the "Premises-Operations" box was not covered by appellant's insurance policy.[9]

Order reversed.

7. We also note that according to Couch, *Insurance 2d,* § 44.291 at 708: ". . . [T]here is no 'accident' within the coverage of a contractor's liability policy where the contractor or his employee commits a trespass upon the land of another in the mistaken belief that it is the land on which the contracting work is to be done." The cause of the injury is said to be a voluntary and intentional act rather than an "accident." However, another line of cases holds that a trespass may be an "accident" covered by a Manufacturers' and Contractors' Liability Insurance policy. *See York Industrial Center, Inc. v. Michigan Mut. Liability Co.,* 271 N.C. 158, 155 S.E.2d 501 (1967); *Haynes v. American Cas. Co.,* 228 Md. 394, 179 A.2d 900 (1962); *N. W. Electric Power Cooperative, Inc. v. American Motorists Ins. Co.,* 451 S.W.2d 356 (Mo.App.1969); *McAllister v. Hawkeye-Security Ins. Co.,* 68 Ill.App.2d 222, 215 N.E.2d 477 (1966); Couch, *Insurance 2d,* § 44.291 (Supp.1976). These cases focus on the "accidental" nature of the trespass from the standpoint of the property owner. We need not decide which line of cases is preferable.

8. Appellee asserts that this construction is absurd because it would limit coverage to damage to structures scheduled to be destroyed. This is fallacious. The policy would apply to structural property damage to any building caused by the demolition of one of the seven structures specified in the "Premises-Operations" box. This risk is labeled the "collapse hazard" in the insurance policy before us and is covered.

9. Appellant also asserts that the insurance policy specifically excludes coverage of the two Reading buildings because the "Exclusion" section of the policy states that this insurance does not apply to "property in the care, custody or control of the insured as to which the insured is for any purpose exercising physical control." According to Couch, *Insurance 2d,* § 44.427 at 13: "In accord with the principle of strict construction of exceptions clauses, there is authority that a 'care, custody or control' clause requires that such care, etc., have been voluntarily entrusted by the owner or one lawfully in charge of such property." However, some cases have found the consent of the property owner to be irrelevant. *Herrman v. Folkerts,* 202 Kan. 116, 446 P.2d 834 (1968); *Crist v. Potomac Ins.*

Co., 243 Or. 254, 413 P.2d 407 (1966); *Falls Sheet Metal Works, Inc. v. United States Fidelity and Guaranty Co.,* 17 Ohio App.2d 209, 245 N.E.2d 733 (1969); Couch, *Insurance 2d,* § 44.427 (Supp.1976). Because of our disposition of this case, we intimate no opinion as to the proper interpretation of this exclusion clause.