tiff's paralysis at the mid-thigh level downward.

 Plaintiff has submitted a loss of wages estimate between Four Hundred Sixty One Thousand Five Hundred Six Dollars ($461,506.00) and Six Hundred Forty Three Thousand Eight Hundred Ten Dollars ($643,810.00). The Court finds the lower of these two estimates to be the true measure of plaintiff's lost wages. Although plaintiff had completed his high-school "G.E.D." and a semester of college, the government is correct in pointing out that plaintiff's age and past employment record militate against a large award based on loss of earnings. The Court disagrees, however, with the government's assessment that plaintiff should receive no compensation. Defendant apparently bases this conclusion on the theory that, even were he healthy, plaintiff would not work again the rest of his life. The evidence indicates, however, that prior to his accident plaintiff appeared to have taken a greater interest in his professional life. On this basis it appears that there was a significant loss of earnings attributable to defendant's negligence.

With respect to nursing care, plaintiff indicates a range of cost between Eight Hundred Fifty Two Thousand Eight Hundred Sixty Two Dollars ($852,862.00) and Two Million Twenty Four Thousand Four Hundred Forty Six Dollars ($2,024,446.00). Again, the Court finds the lower figure to be more acceptable and sets a value of One Million Dollars ($1,000,000.00) in damages as compensation for future nursing care. This lower figure is applicable less because the Court believes that it will achieve full compensation for full-time nursing care and more because defendant cannot be held liable for all of plaintiff's nursing needs since plaintiff undoubtedly would have required some nursing care and rehabilitation because of his original paralytic injury.

The Court finds a sum of Six Hundred Thousand Dollars ($600,000.00) appropriate as damages for plaintiff's mental and physical injuries. This figure incorporates the fact that plaintiff would have been para-lyzed from his original injury and compensates him for his quadraplegic condition.

In sum, plaintiff's total damages equal Two Million Sixty One Thousand Five Hundred Six Dollars ($2,061,506.00). Plaintiff's prior settlement with the West Carter County Ambulance Service of One Hundred Thousand Dollars ($100,000.00) must be subtracted from this sum leaving a total damage figure of One Million Nine Hundred Sixty One Thousand Five Hundred Six Dollars ($1,961,506.00) awarded to plaintiff.

**Harriet JOHNSON**

v.

**TOWNSHIP OF BENSALEM.**

**Civ. A. No. 83–449.**

United States District Court,
E.D. Pennsylvania.

April 12, 1985.

See also 609 F.Supp. 1343.

Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiff.

Joseph Goldberg, Margolis, Edelstein, Scherlis, Sarowitz & Kramer, Philadelphia, Pa., for defendant.

### MEMORANDUM

LOUIS H. POLLAK, District Judge.

This action arises out of the premature retirement of Sergeant William L. Johnson from the Bensalem Township Police Department. Sergeant Johnson retired on January 31, 1981, at the age of fifty-four, pursuant to his employer's mandatory retirement policy. On May 11, 1981, Sergeant Johnson died. On January 27, 1983, Sergeant Johnson's widow brought this action, seeking damages for wrongful discharge and violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634.

On May 23, 1984, I ruled on the parties' cross-motions for summary judgment. I found, *inter alia*, that (1) defendant is liable under the ADEA for all properly provable damages arising out of Sergeant Johnson's premature retirement, Memorandum/Order at ¶ 1 (May 23, 1984); (2) defendant is also liable for liquidated damages for willfully violating the statute, *id.* at ¶ 5; and (3) defendant may deduct from plaintiff's damages "[a]ny payment made to Mr. Johnson upon his retirement which he would not have received during his employment or at his death had he remained employed until his death." *Id.* at ¶ 4. With regard to the damages set-off issue, I specifically found that "payments made to Mr. Johnson on his retirement for accrued sick leave in the amount of $8602.01" were to be deducted from plaintiff's damages. *Id.*

Plaintiff has moved to reconsider my ruling that defendant may deduct Sergeant Johnson's accrued sick leave from plaintiff's damages. In addition, plaintiff has moved to compel officers and employees of the township to answer questions concerning sick pay benefits. Both motions are opposed.

### I. MOTION TO RECONSIDER THE SET–OFF OF ACCRUED SICK LEAVE

In granting defendant's motion for summary judgment on the question whether defendant should receive a set-off for accrued sick leave, I necessarily found as a matter of law that plaintiff would not have received such benefits had her husband remained an employee of the township until his death. This finding was based on the language contained in the applicable collective bargaining agreement, the relevant portion of which reads:

> Upon retirement, but only in the event the employee has worked twenty-five (25) years of full-time service with the DEPARTMENT and has attained the age of fifty (50) years minimum, the retiring member of the DEPARTMENT shall receive pay at his then current daily rate for all accumulated and unused sick leave credited to him on the date of retirement, not to exceed one hundred (100) days.

Agreement, Article IV, ¶ B. (attached as Exhibit S to Defendant's Motion for Summary Judgment). In addition to the contract, I had before me the affidavit of Natalie Strange, Bensalem Township Manager. Ms. Strange states in her affidavit that Sergeant Johnson's estate would not have received any accrued sick pay benefits had Sergeant Johnson died while still an

employee of the township. Strange Affidavit (Feb. 14, 1984).

Plaintiff argues that this conclusion was error, and submits the affidavit of Detective Kenneth Hopkins, who signed the collective bargaining agreement on behalf of the township's police officers. Mr. Hopkins' affidavit states that "the estate of a Bensalem Township Police Officer who dies while employed is entitled to receive pay for the deceased officer's accumulated and unused sick leave credited to him on the date of his death." Hopkins Affidavit (Oct. 10, 1984).

■ At the outset, there is a good deal of confusion in the briefs as to the standard I must apply to plaintiff's motion to reconsider. Plaintiff assumes her motion falls within Rule 60(b), the relevant portion of which provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); ...

Fed.R.Civ.P. 60(b). As the text of the Rule makes clear, however, the Rule applies only to challenges of final judgments. *Laffey v. Northwest Airlines, Inc.*, 642 F.2d 578, 583–84 (D.C.Cir.1980); *Campos v. Puerto Rico Sun Oil Co.*, 536 F.2d 970, 972 n. 6 (1st Cir.1976); 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.20, at 60–170 to 60–172 (2d ed. 1983). Interlocutory orders, such as the one at issue here, "are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." 7 J.

Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.20, at 60–170 (2d ed. 1983). *Accord Campos v. Puerto Rico Sun Oil Co., supra; Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir.1970). *See also John Simmons Co. v. Grier Bros.*, 258 U.S. 82, 90–91, 42 S.Ct. 196, 199–200, 66 L.Ed. 475 (1922) ("if an interlocutory decree be involved, a rehearing may be sought at any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity"); Moore & Rogers, *Federal Relief from Civil Judgments*, 55 Yale L.J. 623, 641–42 (1946) (discussing *Simmons*). Thus, the stringent requirements of Rule 60(b) do not apply in this case.[1]

I therefore proceed to consider whether revision of my May 22, 1984 Order is warranted on the record before me. Plaintiff appears to argue that the affidavits of Mr. Hopkins and Ms. Strange create a standoff: representatives of labor and management have directly contradicted each other with regard to the interpretation of the relevant contract provision. The results of this swearing contest, plaintiff argues, raise a genuine issue of material fact as to whether accrued sick leave must, under the contract, be paid to the estates of police officers who die while still employed by the township.

It is of course hornbook law that the interpretation of contractual provisions is in the first instance for the court. *E.g., Brokers Title Co. v. St. Paul Fire & Marine Ins. Co.*, 610 F.2d 1174, 1178 (3d Cir. 1979). The threshold issue is whether the contract is ambiguous; if no ambiguity exists there is no fact issue which prevents the award of summary judgment. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1009–1013 (3d Cir. 1980).

---

1. By so concluding, I do not mean to imply that parties are free to relitigate issues which the court has resolved on motions for summary judgment, where neither new evidence nor new legal theories are advanced. There is an interest in finality even where interlocutory orders are involved. *See* 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.404[1], at 118 (2d ed. 1984) ("Prejudgment orders remain interlocutory and can be reconsidered at any time, but efficient disposition of the case demands that each stage of the litigation build on the last, and not afford an opportunity to reargue every previous ruling"). That interest is sufficiently protected when, as here, the moving party offers newly discovered, noncumulative evidence in support of its argument that the interlocutory order should be reconsidered.

In this case, I do not find any ambiguity in the relevant provision of the collective bargaining agreement. That provision states simply that members of the police department who (1) retire after twenty-five years of service, and (2) are at least fifty years old, are to collect up to 100 days of accrued sick leave pay. Payment is due "[u]pon retirement"; the amount of sick leave to which the employee is entitled is based on "the current daily rate for all accumulated and unused sick leave credited to him on the date of retirement." Agreement, Article IV, ¶ B (attached as Exhibit S to Defendant's Motion for Summary Judgment). There is no provision for employees who die during the course of their employment. The plain meaning of this provision is that officers are to receive accrued sick leave upon retirement and not otherwise.

Plaintiff has offered no evidence to the contrary. Mr. Hopkins' affidavit, like that of Ms. Strange, merely states a conclusion. The affidavit does not offer any particular facts from which one might infer that the parties intended the sick pay provision to mean something other than what its language suggests. Nor has plaintiff pointed to the existence of such facts in her brief. Consequently, I must find, based on the language in the collective bargaining agreement, that Mr. Johnson's estate would not have received accrued sick leave had he been employed by the police department at the time of his death in May, 1981. Plaintiff's motion to reconsider is denied.

## II. MOTION TO COMPEL

Plaintiff seeks to compel various officers of the township to answer questions concerning accrued sick leave payments. Based on my ruling on plaintiff's motion to reconsider, such questions are irrelevant. Accordingly, plaintiff's motion to compel is denied.