In re MURATONE COMPANY, INC., Debtor.

CORNELL & COMPANY, INC.

v.

FIRST INDEMNITY OF AMERICA INSURANCE COMPANY, et al.

Bankruptcy No. 93–10439F.
Civil Action No. 95–5782.

United States District Court, E.D. Pennsylvania.

July 11, 1996.

Joseph M. Gindhart, Wissow, Odza, Steckiw & Gindhart, Philadelphia, PA, for Muratone Company, Inc.

Peter F. Marvin, C. Paul Scheuritzel, Jr., Toll, Ebby, Langer & Marvin, Philadelphia, PA, for Cornell and Company, Inc.

John A. Greenhall, Cohen & Huntington, P.C., Philadelphia, PA, for First Indemnity of America Insurance Company.

Frederic J. Baker, Philadelphia, PA, for Frederic J. Baker, Trustee.

### *MEMORANDUM AND ORDER*

SHAPIRO, District Judge.

This is an appeal from a bankruptcy court judgment that Muratone Company, Inc., Debtor ("Muratone"), and First Indemnity of America Insurance Company ("First Indemnity") are not obligated on certain payment and performance bonds which Cornell & Company ("Cornell"), the prime contractor on a construction project, required its subcontractor, Muratone, to provide. For the reasons stated below, the judgment of the bankruptcy court will be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

The bankruptcy court made the following findings of fact:

Appellant Cornell is a corporation in the construction business as a general contractor. Finding of Fact ("FOF") 1. In 1991, Cornell was the successful bidder on a construction contract with the Southeastern Pennsylvania Transportation Authority ("SEPTA") to perform certain major structural repair work on a portion of SEPTA's Frankfort elevated railway line. FOF 4. On or about February 14, 1991, Cornell entered into a subcontract for certain painting work with Muratone. FOF 6.

The subcontract required Muratone to provide performance and payment bonds satisfactory to Cornell. Paragraph 13.7 of the subcontract provides:

> [Muratone] shall furnish [Cornell], if requested, full and duly executed Performance and Payment Bonds, underwritten by a surety or sureties satisfactory to [Cornell], in the full amount of this Subcontract. [Muratone's] failure to deliver satisfactory bonds within ten (10) calendar days after demand, may be deemed a material breach of this Subcontract.

FOF 7. Exhibit A to the subcontract further states:

> Performance Bond
>
> Muratone will supply a Payment and Performance Bond in the amount of the Subcontract Sum at no additional cost to Cornell.

FOF 9.

Muratone began "site work" on May 26, 1991, and actual work no later than the first week of July, 1991. FOF 10, 13. Cornell had a contractual right to insist on Muratone's supplying performance and payment bonds before it allowed Muratone to initiate "site work" or more substantive work but it did not do so. FOF 15. However, between February and September 1991, Cornell did ask that Muratone provide the bonds on numerous occasions. FOF 16.

Muratone attempted to obtain the required bonds without success prior to September, 1991. FOF 17. On or about September 4, 1991, performance and payment bonds were issued by appellee First Indemnity "as surety for the subcontract work Muratone was to perform for Cornell on the project." Statement of Uncontested Facts 8; FOF 18. Muratone's proffered bonds were for $1.8 million instead of the full subcontract amount of $2.8 million; Cornell agreed to accept bonds in this lower amount because that was all that Muratone could afford. FOF 20.

In consideration for the issuance of the bonds, Muratone paid a premium of $56,000 to the Stoll Agency ("Stoll"), an entity engaged in the business of providing bonds and insurance to contractors. FOF 22–23. Stoll forwarded $56,000 less its commission (15%) to First Indemnity.[1] FOF 24. Cornell, through an authorized special payment of $56,000, advanced the money to Muratone to pay the bond premium. FOF 26. Cornell delivered this payment to Muratone as Muratone delivered the bonds to Cornell. FOF 27.

The bonds were delivered to Mr. Mitchell of Cornell on or about September 14, 1991. FOF 21. Mitchell forwarded the bonds to McCrea and Gallen, Cornell's bonding agent, who forwarded them to Cornell's bond surety on the project, Reliance Insurance Company ("Reliance"), for review. FOF 29–30. On or about September 26, 1991, Reliance sent Mitchell a written opinion stating that the bonds were issued by a substandard surety company and they would generally prefer bonds issued by a company "with considerably greater financial strength." FOF 31–32. Mitchell received the September 26th letter on October 3, 1991. FOF 33.

On November 8, 1991, Mark J. Evans, CPA and Chief Financial Officer of Cornell, sent Muratone a letter stating: "Please be advised that this bond is unacceptable to us.... It is our position that you have not complied with the bond requirement provision of your contract and that corrective action must be taken immediately." FOF 34, 36. Although the letter referred only to the performance bond, both the performance and

---

1. First Indemnity has placed these funds in es-    crow pending the outcome of litigation.

874

payment bond were returned. Statement of Uncontested Facts 18; FOF 37. Upon receipt of these bonds, Muratone sent them to Stoll, FOF 38, and "request[ed] that the Stoll Agency and the bonding company either satisfy Cornell or return the premium as requested by Cornell." FOF 43. Stoll still had possession of the bonds at the time of trial. FOF 38.

Stoll responded by letter stating that it had forwarded "the correspondence" to First Indemnity and that it was waiting for First Indemnity's response "to the Cornell rejection of their bond." FOF 44. The letter, referring to telephone conversations of Mary Stoll Walter with the Executive Vice President of the National Association of Surety Bond Producers and a representative of the Surety Association of America, stated:

> in their opinion, once performance bonds are issued, they are non-cancelable [sic] documents, and the premium charged for those bonds is earned. The fact that two and one half months went by between the time the bonds were issued, and the time that Cornell rejected the bonds, only adds to the hypothesis that the bonds are still in effect.

FOF 45.

Cornell did not seek a return of the bonds at any time. FOF 38. Cornell's November 8th letter stated that Muratone was not in compliance with its contractual bonding requirement, but Cornell did not declare Muratone in default of the subcontract. FOF 39. Despite dissatisfaction with the First Indemnity bonds, Cornell accepted Muratone's continued performance. FOF 41.

On November 21, 1991, Muratone's president, Mr. Tiedeken, telephoned McCrea and Gallen to discuss the bonds; subsequently, McCrea and Gallen sent Muratone a letter explaining the requirements for a satisfactory surety company and stating "industry practice dictates that once the original bonds are returned the appropriate credit should be applied as no outstanding liability exists." FOF 46.

On November 26, 1991, Cornell wrote Muratone again "[i]n conjunction with [Cornell's] previous letter to [Muratone] dated Novem-

ber 8, 1991" and stated specific reasons that the First Indemnity performance bond was "unacceptable to us." FOF 47. Copies of the two letters were forwarded to Stoll. FOF 49. Stoll responded that First Indemnity proposed new bonds with Colonia Insurance Company as the surety "to replace the existing subcontract bonds". FOF 50. Muratone sent the proposal to Cornell on December 16, 1991; it was understood by Cornell, Muratone, Stoll, and First Indemnity that the $56,000 premium previously paid by Muratone would be used to obtain the new surety bonds. FOF 51. Cornell sent the "Colonia proposal" to McCrea and Gallen for review on December 31, 1991. FOF 52.

During November and December, 1991, Muratone continued work under the subcontract. Muratone received a significant progress payment at the end of October, 1991; it received a $20,000 payment in November, 1991, although it performed more than $20,000 worth of work. Muratone was not paid by Cornell in December, 1991 or January, 1992. FOF 53.

Cornell and McCrea and Gallen discussed the acceptability of Colonia with Reliance on or about January 3, 1992. Reliance opined that Colonia would probably be acceptable, even though it was a reinsurer rather then a primary insurer. FOF 54. By this time, Cornell suspected Muratone was in default and that termination was a real possibility. FOF 54. Cornell was concerned that a bonding company accepted as a surety in January, 1992 might refuse to reimburse Cornell for a default occurring before issuance of the bonds. FOF 54. "None of the replacement bonds was accepted by Cornell." Statement of Uncontested Facts 22; FOF 55.

Cornell terminated its subcontract agreement with Muratone by letter dated February 5, 1992. FOF 59. Prior thereto, in early 1992, Stoll had discussed with First Indemnity its obligation to return the premium paid for the bonds. FOF 61. First Indemnity, by letter to Stoll dated February 7, 1992 stated that it "has taken the position that the ... bond is in full force and effect" and "it is our intention that since liability has incurred, the premium is earned." FOF 62.

First Indemnity received a copy of Cornell's February 5, 1992 termination letter after it sent the February 7, 1992 letter to Stoll. FOF 64. On or about February 28, 1992 First Indemnity sent Cornell a "General Form Status Inquiry." Cornell responded on March 2, 1992 that:

it would hold First Indemnity liable for any sums Cornell expended in completing Muratone's work under the subcontract in excess of the unpaid portion of the contract amount and for any claims made by suppliers, laborers, union funds or other claims based on any failure by Muratone to meet its obligations.

Statement of Uncontested Facts 37–38; FOF 64.

First Indemnity "never provided formal notice to Cornell or any of Muratone's suppliers that the Bonds were canceled." "Cornell never communicated in writing with any of Muratone's materialmen or subcontractors about Cornell's concerns with the Bonds issued by First Indemnity." Statement of Uncontested Facts 39–40; FOF 63.

First Indemnity instituted a declaratory judgment action against Cornell and several of Cornell's suppliers in state court to obtain a declaration that the bonds were not in effect. Statement of Uncontested Facts 43; FOF 65. Muratone filed for bankruptcy. Cornell filed this adversary proceeding against Muratone and First Indemnity for a declaration that the bonds issued in September, 1991 obligated First Indemnity as surety on Muratone's default. Appellees sought a counterdeclaration that the bonds were not in effect due to Cornell's rejection. The bankruptcy court, after a trial, made the following conclusions of law:

1. The contract between Cornell and Muratone required the latter to obtain surety bonds acceptable to the former.

2. Muratone sought to enter into a suretyship agreement with First Indemnity.

3. In accordance both with the contract and with Pennsylvania law, Cornell was to acknowledge its acceptance of First Indemnity before the suretyship agreement became effective.

4. Under state law, First Indemnity had no right to contest Cornell's decision regarding acceptance.

5. Cornell rejected the suretyship agreement with First Indemnity. (No party has sought to challenge the reasons for Cornell's rejection.) Thus, there was no suretyship agreement when Cornell declared Muratone in default of its contract.

6. First Indemnity did not, by clear and convincing evidence, equitably estop itself from denying liability on the surety bonds.

## DISCUSSION

■ When reviewing a bankruptcy court decision, the district court reviews findings of fact under the clearly erroneous standard; the standard of review for questions of law is plenary. *See Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir.1992), *cert. denied*, 115 S.Ct. 1793 (1992). At oral argument, the parties admitted that no finding of fact was clearly erroneous, but Cornell nevertheless argues that the bankruptcy court was clearly erroneous in failing to find that: (1) Cornell accepted the First Indemnity bonds, and (2) First Indemnity was estopped to deny liability on the bonds.

■ Cornell also claims three Bankruptcy Court determinations were erroneous conclusions of law: (1) Cornell did not accept the First Indemnity bonds; (2) Cornell rejected the suretyship agreement with First Indemnity and Muratone; and (3) First Indemnity was not equitably estopped to deny liability on the bonds. The alleged "non-findings" of fact are inextricably intertwined with issues of law; on these mixed issues of law and fact, the court's review is plenary.

### I. *Failure to Accept the Bonds/Rejection of the Suretyship Agreement*

The relationship between Cornell, Muratone, and First Indemnity was intended to be a suretyship with First Indemnity as surety, Muratone as principal, and Cornell as obligee. The Bankruptcy Court correctly applied Pennsylvania law in construing the suretyship agreement.

■ Under Pennsylvania law a suretyship is a three-party relationship in which the

surety agrees to perform the principal's obligation if the principal fails to perform, 8 Pa.P.S. § 1; however, the suretyship contract itself is between the principal and surety. *See First National Bank & Trust Co. v. Stolar,* 130 Pa.Super. 480, 197 A. 499 (1938). In the instant case, the suretyship agreement between the principal and the surety is not at issue; the issue is the enforceability of the suretyship agreement by the obligee.

■ If the obligee seeks to enforce the suretyship,

> [A]lthough the suretyship contract is formed at the time the surety's offer is accepted by the principal, it may not be enforced by the obligee against the surety unless accepted by the obligee within a reasonable time. Such a provision is for the protection of the surety inasmuch as such notice enables the surety to know the nature and extent of its liability.

*Trident Corp. v. Reliance Insurance Co.,* 350 Pa.Super. 142, 504 A.2d 285, 290 (1986) (surety contract formed was rescinded by surety to detriment of principal; judgment for principal affirmed), citing *Acme Mfg. Co. v. Reed,* 197 Pa. 359, 47 A. 205 (1900); *Deeter v. Dull,* 420 Pa.Super. 576, 617 A.2d 336, 341 (1992), *appeal denied,* 535 Pa. 619, 629 A.2d 1380 (1993) (lessor was not surety or guarantor of lessee's obligation to maintain workmen's compensation claim) ("A suretyship may only be enforced by an obligee against a surety where the obligee affirmatively accepts the surety contract within a reasonable time . . .").

Cornell argues: there are two types of surety arrangements: a conditional guarantee requiring acceptance by the obligee, and an absolute guarantee taking effect upon delivery, *Acme,* 47 A. at 206; the cases cited by the bankruptcy court involve conditional guarantees where the surety was not certain of the extent of its liability at the time of the surety contract, *see Deeter,* 617 A.2d at 341 (notice of acceptance allows surety to know nature and extent of its liability); and, in the instant case, First Indemnity knew the extent of its liability because it had reviewed the Cornell/Muratone subcontract.

■ There are some fact-specific circumstances when receipt of the bonds constitutes acceptance, *e.g., Hanauer v. National Surety Co.,* 279 Pa. 345, 123 A. 863 (1924) (bond effective upon delivery), and some cases where a surety contract is binding and enforceable even before execution and delivery of the bonds in their final form, *Turner Construction v. First Indemnity,* 829 F.Supp. 752, 760–61 (E.D.Pa.1993), *aff'd without op.,* 22 F.3d 303 (3d Cir.1994) (industry custom supported reliance on a letter agreement to bond project).

■ However, Cornell made this guarantee conditional by reserving the right in the Subcontract, incorporated by reference in the bonding agreement, to evaluate and accept or reject the required bonds. Paragraph 13.7 of the subcontract provides:

> [Muratone] shall furnish [Cornell], if requested, full and duly executed Performance and Payment Bonds, *underwritten by a surety or sureties satisfactory to [Cornell],* in the full amount of this Subcontract. [Muratone's] failure to deliver satisfactory bonds within ten (10) calendar days after demand, may be deemed a material breach of this Subcontract.

(emphasis added). Cornell argues that the bankruptcy court went "beyond the normal meaning of the words" to "impart to [them] a meaning that clearly contradicts the parties writings and their other manifestations of intent," but Cornell's behavior demonstrated an evaluation process culminating in the rejection and return of the bonds.

■ Upon receipt of the bonds, Cornell sent them to its bonding agent, McCrea and Gallen for review; McCrea and Gallen forwarded them to Reliance, Cornell's bonding surety on the project. Reliance, by written opinion, stated it would prefer a surety company "with considerably greater financial strength"; it concluded "we will leave the decision with [Cornell] as to accepting the [First Indemnity] bonds or performing an alternative performance security. . . ." On November 8, 1991, Cornell wrote to Muratone that the performance bond was "unacceptable" and recommended that the bond be returned to the surety for an immediate refund. Cornell returned both the perfor-

mance and payment bonds to Muratone with the letter. On November 21, 1991, McCrea and Gallen, at Muratone's request, wrote it a letter explaining what would make a surety acceptable. Then Cornell wrote to Muratone on November 26, 1991 to state its explicit reasons why the First Indemnity bonds were unacceptable.

Despite these letters and physical return of the bonds, Cornell now argues the November 8th letter was only an offer to rescind a surety arrangement effective upon delivery. But the November 8th letter stated that Muratone "ha[d] not complied with the bond requirement provision of the contract", *i.e.,* they had not provided bonds satisfactory to Cornell. Cornell's position is also contradicted by subsequent actions of the parties. Muratone asked Stoll to obtain an alternative satisfactory surety; it was understood by all parties that the premium for the First Indemnity bonds was to be used to purchase replacement bonds. Another surety, proposed by First Indemnity through Stoll was rejected by Cornell. It was not until February 7, 1992 that First Indemnity, acting without knowledge of Muratone's termination on February 5, 1992, stated that its bond was in full force and effect and since liability was incurred, its premium was earned.

Cornell required Muratone to provide bonds underwritten by a surety acceptable to it; the bonds were not accepted by Cornell. Cornell rejected the bonds and cannot now hold First Indemnity bound to honor them.

## II. *Equitable Estoppel*

[9–12] Cornell also argues that First Indemnity is equitably estopped from denying liability to Cornell. For estoppel, "the litigant must prove (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *United States v. Asmar,* 827 F.2d 907, 912 (3d Cir.1987); *Monongahela Valley Hospital, Inc. v. Sullivan,* 945 F.2d 576, 589 (3d Cir.1991). In the insurance context:

> [t]o work an estoppel, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to

his own prejudice in reliance thereon. Accordingly, an insurer is not estopped to deny liability on a policy where the plaintiff was not misled by the defendant's conduct.

*Pfeiffer v. Grocers Mutual Ins. Co.,* 251 Pa.Super. 1, 379 A.2d 118, 121 (1977) (citations omitted); *Bensalem Twp. v. Western World Ins. Co.,* 609 F.Supp. 1343, 1346 (E.D.Pa.1985) quoting *Sabino v. Junio,* 441 Pa. 222, 272 A.2d 508, 510 (1971) ("the essential elements of estoppel are an inducement by the party sought to be estopped ... to the party who asserts the estoppel ... to believe certain facts to exist—and the party asserting the estoppel acts in reliance on that belief"). A party asserting estoppel has the burden of establishing its prerequisites by "clear, precise and unequivocal evidence." *Chrysler Credit Corp. v. First National Bank & Trust,* 746 F.2d 200, 206 (3d Cir. 1984).

■ First Indemnity's February 7th letter to Stoll stated the bonds were wrongly rejected; it did not induce Cornell to do anything because Cornell had terminated Muratone two days earlier. The bankruptcy court found that "the evidence is uncontroverted" that throughout the entire period, Cornell and First Indemnity never communicated with each other. Cornell communicated with Muratone, and First Indemnity communicated with Stoll; First Indemnity could not have directly misled Cornell. Cornell offered testimony that Muratone's President, Tiedeken, informed Cornell's Mitchell in early December, 1991, that First Indemnity contended that the bonds were wrongly rejected. The bankruptcy court, having the benefit of observing the witnesses at the trial, found Tiedeken's denial that he made that statement credible; the actions of Stoll and First Indemnity in offering another surety, Colonia, in December 1991, support Tiedeken's denial.

■ Cornell argues on appeal that the act creating the estoppel was the premium retention by First Indemnity. The bankruptcy court found as fact that Cornell, Muratone, Stoll, and First Indemnity understood that the premium was retained to pay

878

for replacement bonds. *See* FOF 51. There was an active search for replacement bonds, and a subsequent offer of the Colonia bonds rejected by Cornell.

Even if the retention of the premium was a "misrepresentation" by First Indemnity, there is insufficient evidence of reliance by Cornell. After the November letter returning the First Indemnity bonds as "unacceptable," Cornell never asked for the bonds back or asked Muratone to cease efforts to replace the surety. Cornell knew there was an effort to find a new surety; when presented with a new surety in December, Cornell rejected it in January. Cornell has not shown by clear and convincing evidence that it relied on First Indemnity's retention of the bond premium in believing the bonds were in effect.

 All the parties to this dispute now take positions contrary to that suggested by their prior conduct; the parties positions are equally inconsistent. However, in order to find that the bankruptcy court's findings of fact were "clearly erroneous," the court must find that a reasonable factfinder could not have reached its factual conclusions. The bankruptcy court's conclusions after several days of testimony were reasonable. Based on these facts, the bankruptcy court's conclusions of law that Cornell rejected the bonds, the suretyship agreement was rejected by Cornell, and First Indemnity was not estopped from denying the bonds were in effect were correct. The bankruptcy court judgment in favor of First Indemnity and Muratone will be affirmed.

The bankruptcy court order declared that the surety bonds issued by First Indemnity were rejected by Cornell and therefore not enforceable by Cornell upon the debtor's later default. It did not deal with the unearned premium placed in escrow pending the outcome of the litigation. These funds were advanced by Cornell to Muratone to pay the bond premium. The disposition of the escrow fund is for initial determination of the bankruptcy court.

An appropriate order follows.

***ORDER***

AND NOW this 11th day of July, 1996, it is **ORDERED** that the judgment of the Bankruptcy Court is **AFFIRMED.**