J-A13018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALISSA O'HARA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| METLIFE INSURANCE COMPANY USA | : | No. 3477 EDA 2018 |
| A/K/A T/A D/B/A BRIGHTHOUSE LIFE | : | |
| INSURANCE COMPANY, COMPASS | : | |
| ION ADVISORS LLC,  ZENITH | : | |
| MARKETING GROUP INC.,BENJAMIN | : | |
| M. DOURTE AND CAROL GANGEWER | : | |

Appeal from the Order Dated October 30, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  170500167

BEFORE:   SHOGAN, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                     **FILED SEPTEMBER 11, 2019**

Appellant Alissa O'Hara appeals from the order granting the motion for summary judgment filed by Appellee MetLife Insurance Company USA a/k/a t/a d/b/a Brighthouse Life Insurance Company.[1]  Appellant argues that the trial court erred in concluding that Appellee's life insurance policy for Appellant's husband was not in effect before his death.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As noted below, Appellant and Appellee entered into stipulations dismissing, without prejudice, the claims and cross-claims against the remaining parties, Compass Ion Advisors LLC (Compass), Zenith Marketing Group Inc. (Zenith), Benjamin M. Dourte, and Carol Gangewer.  Mr. Dourte and Ms. Gangewer were employees of Compass.  Where necessary, we refer to Compass, Mr. Dourte, and Ms. Gangewer, collectively, as "the Compass defendants."

The factual background to this appeal is not in dispute. The Compass defendants were financial advisers to Appellant and her husband, Scott O'Hara (the decedent). In June 2015, one of the Compass defendants, Mr. Dourte, recommended that Appellant and the decedent purchase life insurance. According to Appellant, the Compass defendants acted as Appellant's and the decedent's insurance broker. Compl., 5/1/17, at 8.

In July 2016, the decedent completed an application for a $1 million life insurance policy with Appellee. The decedent filled in Section I of the application, which was entitled "About the Proposed Insured." Application at 1. Section II of the application was entitled "About the Owner" and stated, "Complete ONLY if the Owner is NOT the Proposed Insured." *Id.* The decedent did not complete Section II of the application.

Under the heading "Agreement / Disclosure," the application stated:

> . . .[2] **no insurance will take effect until a policy is delivered to the Owner and the full first premium due is paid**. It will only take effect at the time it is delivered if: (a) the condition of health of each person to be insured is the same as stated in the application; and (b) no person to be insured has received any medical advice or treatment from a medical practitioner since the date of the application.

*Id.* at 6 (emphasis added). The decedent named Appellant as the sole beneficiary.

---

[2] The language omitted from the quotation referred to temporary insurance. There is no indication that temporary insurance was at issue in this case.

In September 2016, Appellee approved the application and issued a term life insurance policy with an effective date of June 25, 2016. The first page of the Policy read as follows:

**Non-Participating**

This is a yearly renewable term insurance policy that is automatically renewable until the Final Expiry Date. Premiums are payable for a specified period. Premiums for the first year are shown on the Policy Specifications page and for later years are shown on the Schedule of Renewal Premiums page. **If the Insured dies while the Policy is in force, we will pay the Policy Proceeds to the Beneficiary**. We must receive proof of the Insured's death. Any payment will be subject to all of the provisions of the Policy.

**RIGHT TO EXAMINE POLICY**

**Please read the Policy. You may return the Policy to us or to our representative through whom it was purchased within 10 days from the date you receive it. If you return it within this period, we will refund any premium paid and the Policy will be void from the start.**

\* \* \*

This Policy is a legal contract between the Owner and [Appellee]. PLEASE READ YOUR CONTRACT CAREFULLY.

Policy, 6/25/17, at 1 (first emphasis added; second emphasis in original). The policy defined the terms "You and Your" as "The Owner of the Policy." *Id.* at 6.

Section 1 of the policy defined the term "Insured" as "The person whose life is insured under the Policy. The name of the Insured is shown on the Policy Specification page." *Id.* at 6. Section 2 of the policy, entitled "Policy

Proceeds," stated: "We will pay the Policy Proceeds to the Beneficiary upon receipt of proof of the Insured's death." *Id.* at 7.

Section 3 of the policy, entitled "Payment of Premiums," read:

The first premium is due as of the Policy Date. While the Insured is living, premiums after the first premium must be paid at our Designated Office. **The Policy will not be in force until the first premium is paid**. **If you are in possession of the Policy, and the first premium has not been paid, it will be considered that you have the Policy for inspection only**.

Premiums for the Policy and for any riders are shown on the Policy Specifications and on the Schedule of Renewal Premiums pages. No premium is due or payable for any period after the death of the Insured.

*Id.* at 8 (emphasis added). Section 3 provided a 31-day grace period to pay "each premium" after its due date before the policy would lapse. *Id.*

Section 4 defined "The Contract" as follows:

We have issued the Policy in consideration of the Application and payment of premiums. The Policy includes the Application, any riders, and any endorsements. Together they comprise the entire contract and are made a part of the Policy when the insurance applied for is accepted.

*Id.* at 9.

Appellee sent the policy to Zenith,[3] which forwarded the policy to Compass. Compass received the policy on October 18, 2016. On October 19, 2016, the decedent suffered cardiac arrest and died.

---

[3] According to Appellee, Zenith was acting as a general managing agent for Appellee.

The Compass defendants still had the policy at the time of the decedent's death. One of the Compass defendants contacted Appellant and sent her the policy on October 28, 2016. *See* Compl. at 17. Meanwhile, Appellee issued a notice for the payment of the initial premium, which was dated October 10, 2016, and indicated that the first premium was due by November 10, 2016. According to Appellant, the Compass defendants sent her a copy of the initial premium notice. *Id.* at 18.

On November 3, 2016, Appellant sent a check to Appellee for the first premium. *Id.* at 19. Appellee accepted the payment, but when Appellant attempted to claim the death benefits in December 2016, Appellee refused to pay. Appellee asserted that the policy was not in effect and reimbursed Appellant for the payment of the premium.

Appellant commenced the instant action against Appellee, Zenith, and the Compass defendants by filing a complaint on May 1, 2017. With respect to Appellee,[4] Appellant asserted claims for breach of contract and bad faith under 42 Pa.C.S. § 8371.[5] Compl. at 25-27. Appellee filed an answer, new matter, and cross-claims against Zenith and Compass.

---

[4] In full, Appellant raised the following causes of action in her complaint: (1) negligence as against the Compass defendants and Zenith; (2) breach of duty to advise as against the Compass defendants and Zenith; (3) breach of fiduciary duty as against the Compass defendants and Zenith; (4) breach of contract as against Appellee; and (5) bad faith under 42 Pa.C.S. § 8371 as against Appellee.

[5] Section 8371 states:

Of relevance to this appeal, on September 4, 2018, Appellee filed a motion for summary judgment asserting that all of Appellant's claims against it were meritless. Appellee claimed that the policy had not taken effect at the time of the decedent's death. That same day, Appellant filed a motion for partial summary judgment against Appellee, asserting that all conditions for the policy taking effect were met and the policy was in force when the decedent died.

On October 30, 2018, the trial court entered orders that granted Appellee's motion for summary judgment against Appellant and denied Appellant's motion for partial summary judgment against Appellee. The

_____

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. The Pennsylvania Supreme Court has held:

[T]o prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.

*Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).

- 6 -

October 30, 2018 orders became final when the remaining claims among the parties were withdrawn by stipulation.

On November 21, 2018, Appellant timely appealed. The trial court did not require Appellant to submit a Pa.R.A.P. 1925(b) statement, but it issued a Rule 1925(a) opinion.

In its opinion, the trial court reasoned that Appellant was not entitled to relief because the policy had not taken effect at the time of the decedent's death. Trial Ct. Op., 12/14/18, at 7. The trial court opined that the application required that the policy be delivered to the decedent before his death. *Id.* at 7. Moreover, the trial court determined that "[w]hen [the decedent] died without paying the first full premium, there was no contract of insurance." *Id.* at 6. In support, the trial court cited the provision that "no premium is due or payable after the death of the insured" in Section 3 of the policy. *Id.* The trial court concluded that Appellant's "attempt to consummate the contract for life insurance by sending a premium payment after the death of the person whose life constituted the subject matter of the contract was invalid." *Id.*

Appellant presents the following questions on appeal:

[1.] Was there an enforceable contract of insurance . . . ?

[2.] Did [Appellee] breach the insurance contract by failing to pay the policy proceeds to Appellant?

Appellant's Brief at 7.

Appellant presents overlapping arguments challenging the trial court's order granting summary judgment in favor of Appellee and dismissing her

breach of contract and bad faith claims. Specifically, Appellant argues that she met all conditions for coverage to be in effect at the time of the decedent's death. *Id.* at 8-9.

First, Appellant notes that the application required that a policy be "delivered to the Owner." *See id.* at 26 (quoting Application at 6). Appellant claims that the delivery of the policy to Compass constituted delivery to the "Owner" because Compass was an agent of the decedent. *Id.* at 28. Appellant contends that the requirement of delivery to an owner of the policy was ambiguous, and the ambiguity should have been construed against Appellee as the insurer. *Id.* at 29. Appellant further asserts that it was reasonable to expect that delivery to Compass would have satisfied the condition that the policy was delivered to the "Owner" as defined in the policy. *Id.* at 30-31.

Second, Appellant notes that the application provided that the policy would "only take effect at the time it [was] delivered if . . . the condition of health of each person to be insured is the same as stated in the application." *See id.* at 26. Appellant contends that the decedent was in the same health when he applied for the policy and when Compass received the policy. *Id.* at 31.

Third, Appellant claims that the application and policy did not require that the decedent be in the same health at the time of the application when the first premium was paid. *Id.* at 33-34 & n.2. Appellant contends that the trial court erred in relying on Section 3 of the policy, which provided that a premium would not be "due or payable for any period after the death of the

Insured." ***See id.*** at 38; Trial Ct. Op. at 6; Policy at 8. Appellant argues that Section 2 of the policy, which provided for the payment of proceeds based only on a notice of death, supported her position that she could pay the first premium after the death of the decedent. Appellant's Brief at 38.

Appellant further contends that Appellee waived any condition that the decedent be alive when she paid the premium. In support, Appellant emphasizes that Appellee accepted her payment and retained the premium for more than two months despite knowing of decedent's death. ***Id.*** at 40-41.

Initially, we note that the following principles govern our review of Appellant's issues:

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.
>
> Additionally, we note that the interpretation of an insurance policy is a question of law that we will review *de novo*.

*State Farm Mut. Auto. Ins. Co. v. Dooner*, 189 A.3d 479, 482 (Pa. Super. 2018) (some citations omitted). "[W]e are not bound by the rationale of the trial court and may affirm on any basis." *Volkswagen Grp. of Am., Inc. v. Kimmel & Silverman*, 74 A.3d 1042, 1043 n.3 (Pa. Super. 2013) (citation omitted).

> It is well settled that
>
> [t]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, a court is required to give effect to that language.

*Erie Ins. Exch. v. Conley*, 29 A.3d 389, 392 (Pa. Super. 2011) (citation omitted).

"If doubt or ambiguity exists it should be resolved in insured's favor." *Penn-Am. Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 264 (Pa. Super. 2011) (*en banc*) (citation omitted). "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Conley*, 29 A.3d at 392 (citation omitted). However, a court "cannot distort the plain meaning of the language to find an ambiguity. Moreover, [the court] will not find a particular provision ambiguous simply because the parties disagree on the proper construction; if possible, [the court] will read the provision to avoid an ambiguity." *Brown v. Everett Cash Mut. Ins. Co.*, 157 A.3d 958, 962 (Pa. Super. 2017) (citation omitted).

It is well settled that "a condition precedent must occur before performance under a contract arises . . . . While conditions usually deal with duties of performance, they may relate to the existence of contracts as well."

***Vill. Beer & Beverage, Inc. v. Vernon D. Cox & Co., Inc.***, 475 A.2d 117, 122 (Pa. Super. 1984) (citations and footnote omitted). Furthermore,

> While the parties to a contract need not utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention. In addition, we note that the purpose of any condition set forth in a contract must be determined in accordance with the general rules of contractual interpretation.

***Davis ex rel. Davis v. Gov't Employees Ins. Co.***, 775 A.2d 871, 874 (Pa. Super. 2001) (citation omitted).

> Under the doctrine of the reasonable expectations of the insured,
>
> Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid . . . .

***Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.***, 116 A.3d 87, 97 (Pa. Super. 2015) (citation omitted). Courts have generally applied the doctrine to issues of coverage "to protect non-commercial insureds from both deception and non-apparent terms." ***Id.*** (citation omitted).

Instantly, the application stated that "no insurance will take effect until a policy is delivered to the Owner and the full first premium due is paid." ***See***

Application at 6.  The language was not subject to different constructions.  Put simply, the application stated that a policy would only take effect upon delivery to a specific party, the decedent, **and** the first full premium being paid.  This Court will not strain the plain meaning of the terms to find an ambiguity.  **See Brown**, 157 A.3d at 962; **Conley**, 29 A.3d at 392.  Because the language was clear and unambiguous, it must be given effect.  **See Conley**, 29 A.3d at 392.

Moreover, the policy stated the obligations of the parties in a clear and unambiguous manner.  The policy indicated that "[i]f the Insured dies **while the Policy is in force**, we will pay the Policy Proceeds to the Beneficiary." Policy at 1 (emphasis added).  Section 3 of the policy further explained that "[t]he Policy **will not be in force** until the first premium is paid." **Id.** at 8 (emphasis added).  Section 3 added that possession of the policy without payment of the first premium would be regarded as an "inspection" of the policy.  **Id.**

Therefore, having reviewed Appellant's arguments and the relevant policy language, we conclude that no relief is due.  Even if a delivery of the policy occurred before the decedent's death, Appellant cannot avoid the clear meaning of the terms of the application and policy requiring payment of the premium for the policy to take effect.  Although Appellant asserts the application and policy permitted her to pay the first premium after the decedent's death, the clear and unambiguous of the agreement belies her position.  Accordingly, because the first premium had not been paid at the

time of the decedent's death, we agree with the trial court that the policy was not in effect.[6]

To the extent Appellant argues that Appellee waived any of the conditions precedent, we disagree. Our courts have held that "In Pennsylvania, the doctrine of waiver or estoppel cannot create an insurance contract where none existed." **Pfeiffer v. Grocers Mut. Ins. Co.**, 379 A.2d 118, 121 (Pa. Super. 1977) (citation omitted). Therefore,

> The rule is well established that conditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground of forfeiture, may not be waived by implication from the conduct or action of the insurer. The doctrine of implied waiver is not available to bring within the coverage of an insurance policy, risks that are expressly excluded therefrom.

**Id.** (citation and quotation marks omitted).

Here, Appellant cannot rely on waiver to bring into existence obligations under a policy that did not exist when the decedent died. **See id.** In any event, the mere fact that Appellee deposited and retained Appellant's check paying the premium did not constitute an intentional or knowing relinquishment of Appellee's right to determine that the policy was not in effect at the time of the decedent's death. Although the better practice would have

---

[6] In light of our conclusion, we need not address Appellant's first two arguments that the policy was delivered to the decedent when he was in the same health as when he applied for coverage. **See Volkswagen Grp. of Am.**, 74 A.3d at 1043 n.3. Moreover, we do not address Appellant's argument that the trial court erred in relying on the provision in Section 3 stating that a premium would not be due or payable for any period after the decedent died. **See id.**

been for Appellee to refuse the check, we agree with the trial court's conclusion that Appellant's attempt to consummate the contract was not valid.

In sum, the trial court properly concluded that the policy was not in effect when the decedent died and that Appellee was entitled to summary judgment on Appellant's claims of breach of contract. **See Dooner**, 189 A.3d at 482; **see also Volkswagen Grp. of Am.**, 74 A.3d at 1043 n.3. For the same reason, we agree with the trial court that Appellant could not establish that Appellee acted in bad faith when denying her claim for death benefits. **See Rancosky**, 170 A.3d at 377.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/19